Good morning, Your Honor. My name is Rex Heinke, and I'm here on behalf of the appellant who I'll refer to by shorthand as Talisman. I'm here with my colleague, Mike Small. I'd like to reserve five minutes for rebuttal, so I will watch the clock closely and try and do that. I'd like to turn to our first point, and it's this, that the district court made a legal error by relying on the earlier agreements here. When I say earlier agreements, I mean the separate corporate opportunity agreement and the consulting agreement. The district court relied upon those agreements, even though they were entered into two and a half years before the transfer agreement, which is the agreement that's really in dispute. And they were entered into when Capital Strategies was not a party, so that my client got its rights from Capital Strategies. It had nothing to do with these earlier agreements, and neither did Capital Strategies, who it got its rights from. So we submit that for the district court to rely on those agreements, they were not incorporated into the transfer agreement. When we were not parties to them, had no involvement whatsoever in them, they simply cannot be relevant to determining the meaning of the transfer fund. And therefore, I'm sorry, the transfer agreement. And therefore, it was legal error for the district court to look back to those agreements and rely upon them to interpret the transfer agreement. Related to that is the next agreement, the termination and release agreement. It was entered into at the time of the transfer fund, the transfer agreement. In construing under California law the intent of the parties with respect to the transfer agreement, was it appropriate to look to those agreements as extrinsic evidence? I don't believe so, Your Honor, because our client had nothing to do with them. It wasn't in the picture at the time those were entered into, didn't negotiate them, didn't know about them, and the party it got its rights for, that is Capital Strategies, also was not around when those agreements were entered into. I had never seen those agreements at the time it entered into the transfer agreement. I'm sure it had seen them, but my point is those agreements were negotiated two and a half years earlier. I understand, but they're extant documents. Your client's coming into a business opportunity, and it's got documents or agreements with Mr. Gunnerman that it has been operating under. You have a transfer agreement. Is it inappropriate for the court to look to the prior agreements to set the stage, set context to try and understand what the parties had before them at the time they entered into the transfer agreement? I think it is under the circumstances of this case, where those were entered into two and a half years before my client's predecessor had anything to do with this. Our client didn't negotiate it, didn't know about the terms, doesn't know what anybody said back and forth, didn't have anything whatsoever to do with those, and negotiated its own agreement. When I say its agreement, I mean the transfer agreement, which Capital Strategies entered into and Talisman succeeded. Why, Mr. Henke, would that not shed any light at all on what Capital Strategies acquired or could acquire? Because, Your Honor, also Capital Strategies was not around two and a half years before, and it entered into the transfer agreement. But it had to acquire something. Right. But that's what it acquired in the transfer agreement. And we don't dispute what's in the transfer agreement as relevant. So your position is that none of the other agreements sheds any light at all on what the transfer agreement meant? Yes, Your Honor, and that the negotiations that went on earlier as to those agreements are all irrelevant, because we weren't a party to those, weren't involved in them. They're two different things, counsel. I understand. They're negotiations and then they're reduced to writing. Your client did have what was reduced to writing. Forget the negotiations. There's no doubt about that. It had awareness of what the prior agreements said. Right. Okay. And did the district court go beyond what the agreement said in informing the context of the transfer agreement, or did it go back and look to negotiations that happened, which, understandably, your client was involved in? The district court's decision is very cryptic and it's not very clear just what it was relying on as to the prior negotiations and the prior agreements. It refers, however, to the understandings that were arrived at when those were entered into. And our point is we had nothing to do with those understandings, weren't a party to them, didn't know about them. But what is key is the termination and release agreement that was entered into at the same time as the transfer agreement. And in the termination and release agreement, this term, the field, which is what we're fighting about here, was defined differently in the termination and release agreement than the transfer agreement. Do you think it aims the same as in the ELA? Am I correct? What's in the transfer agreement is the same as what's in the ELA. What is in the termination and release agreement is different than what's in the ELA. And, you know, I was puzzled by the district court's findings in paragraph 10c of there. It uses the word modify at one point and at another point it uses the word clarifies. Are there really any difference between you and your brothers on the opposite side of this case as to what went on in that in that intermediary agreement? I think there's a big difference. And the difference is this, that in the termination and release agreement, the Sulfco field was explicitly exempted from the field. That is, the field was narrowed because the Sulfco field was taken out. And in your view, that was a modification, not a clarification. Right. That what we ended up with was two very different agreements because the field was defined very differently in these two agreements that were entered into simultaneously. And the district court never discusses that, never explains why those two definitions of field aren't outcome determinative here because they're completely different. Under the definition of field in the termination and release agreement, we acknowledge that there's no violation. I'm a little bit fuzzy on my recollection here. But wasn't the Sulfco field part of the non-competition aspect? Well, the termination and release agreement, Your Honor, had a non-competition clause. Yeah. And wasn't that the aspect that had to do with an arguably different definition? Right. That's right. But our point is that this dispute is all about what does the term the field mean, and that when the parties sat down and negotiated the meanings of the field, they came up with very different meanings at the same time. And one of those meetings, as Your Honor points out, is non-competition. And we admit that there was no violation of that non-competition provision. Why do we admit that? Because the field definition there excluded the Sulfco field. But in the transfer agreement, which we claim was violated, there was no exclusion of the Sulfco field. The district court didn't deal with that at all. It just did what Judge Ripple talked about, which was kind of glossed over the thing in a confusing way without ever explaining why when parties negotiate an agreement, they define a term. Those terms are very, very different. That is an outcome determinative of the meaning of the term. What basis is there in the evidence for supposing that the non-compete definition of Sulfco field was meant to trump the transfer agreement's definition of the field? Your Honor, I've somehow misled you. I'm not arguing that the definition in the termination agreement trumps the transfer agreement. Or replaces it, or modifies it, or clarifies it. Clarifies is maybe the best I come up with. But there are two different field definitions here. And we admit one of them. For two different purposes. I mean, yeah. Right, right. But that's fine. So Mr. Gunnerman can compete. But what he cannot do is use the technology when he competes. If he wanted to do that, then both of those definitions had to be the same. That's the difference. He can compete against us. That's why the non-competition agreement was narrow. But when competing against us, he can't use the technology that we bought. If he wanted to do that, he had to have the terms be exactly the same. And that didn't happen. And that, we submit, is the answer here. I'd like to reserve the rest of my time unless the Court has other questions right now. You may. Thank you. Good morning, Your Honor. My name is Gerald Novak. I represent SELFCO. Mr. Tillotson represents Dr. Gunnerman. I'd like to just focus initially on the standard of review. The issue before the district court was a question of fact. What was the intent of the parties? The intent of the parties was determined by the judge based upon the, quote, conduct, that's what his opinion says, the conduct over the parties over the course of five years. He examined that conduct in light of all our interrelated agreements and the economic substance of the transactions and how the agreements would work together. Under the Hinkson case, the burden that is on the appellant is a very heavy one. They have to show that this factual finding is either illogical or implausible. They cannot re-argue the case as they're doing today. There is no effort in the appellant's briefs, initial or reply, to go through all of the evidence and show that it is illogical or implausible for the judge to have interpreted the parties' intent, again, based on the credibility of the parties testifying, as he noted in his opinion. And we submit that Hinkson requires affirmance because there's been an absolute and utter failure to show that this interpretation is irrational or implausible. And, in fact, as we explain in the brief, the only rational interpretation of the parties' understanding over the course of five years and their course of conduct is the one that was reached by the district judge. To give one example, which is what's focused on in the colloquy we just heard, in April 2003, there were two agreements that were supposed to operate together. All of these agreements, by the way, in response to your earlier questions, were before capital strategies and the lawyers. Three of them were specifically incorporated by reference in the overall transaction. Under one agreement, Dr. Gunneman was separating his activities with clean fuels and was going to go work at Sovco to develop the Sovco IP. In the termination and release, which modified the agreement that was entered into in 2000, the consulting agreement, it was specifically provided you can go and work at Sovco, you can develop the Sovco IP, and there's no breach of your non-compete from the 2000 agreement. At the very same time, very same parties, all the lawyers together, were entering into the transfer agreement. It is the position of the appellant that under that agreement, the minute Dr. Gunneman opened the door to Sovco's offices to go work there, he was breaching the transfer agreement. The non-compete carve-out was utterly useless. There were two mutually contradictory agreements. One defeats the other. The district judge reasonably concluded that you should harmonize the party's understanding, and this is to be recalled. This is in plain view of teams of lawyers, teams of sophisticated businessmen. Everyone knows Dr. Gunneman is developing the IP at Sovco's offices, yet the irrational claim, the implausible claim that's now being made on appeal is, oh, you should have interpreted these agreements to mean they're self-contradictory,  On top of that, you have for two and a half years, following the entering into the transfer agreement, never a peep from Capital Strategies, not the vulture fund that bought this claim, but the people who were party to this transaction. No one from Capital Strategies came to trial to testify, we believe we bought the Sovco IP. No one from Capital Strategies ever said it was a breach of the transfer agreement. The first time those words are uttered are when Talisman buys a claim and brings it, two and a half years later, after Sovco, which is a public company, has been raising millions of dollars in the public domain, all known to Capital Strategies. We submit it is irrational, implausible, and illogical to conclude anything other than the judge did. Such a seamless garment. Why, then, in the termination release agreement, did they use a different definition? The definition belts and suspenders, Your Honor. Belts and suspenders. I don't have my suspenders on, but the issue arose because in the termination release, which is a deal between Clean Fuels, the former employer, and Gunnerman, there was a question raised by the lawyers for Gunnerman. Suppose he invents something else in the future. Are you going to make some kind of claim as to that? So the solution was to have a provision in the non-compete that said any future inventions which arise out of the yen patent, which was in the Sovco IP, are covered by this non-compete. They just wanted to be sure there would be no future claims. End of story. Nothing more than that. There was never any effort to change. I was just checking whether I was counting down or up. I realize I'm counting down here. So we submit that Hinkson cannot be satisfied. There was never any genuine attempt to do that. The other argument that we're talking about here which wasn't mentioned or mentioned briefly is one which I guess I don't think is important enough to raise in oral argument, subjective intent. The allegation is made the trial judge relied on expressions of subjective intent. That was the legal error. In fact, the initial brief made those allegations. We pointed out in our answering brief that there was no such statement by the district judge. He said I relied on the conduct of the parties. He specifically said that. There was nothing in their briefs where they cite to their record with anything to indicate the judge relied on subjective intent. In their reply brief, page 14, footnote 8, they retreat from the outright allegation and now say you should assume he must have relied on subjective intent. There was no basis in the record for the claim. Indeed, it's somewhat ironic because at trial we argued vehemently against any testimony which was sought to be introduced by Talisman as to subjective intent. The judge overruled us. It was Talisman's counsel who brought in some evidence of subjective intent. Over our objection, the details of that are on page 57 of our brief, note 13. There were some further questions or background. No objection was made. So that's utterly without foundation, that allegation. With regard to the issue of incorporation by reference, the argument on appeal seems to be different. Now, in the brief it was the judge, trial judge incorporated the terms of other agreements. The trial judge did no such thing. Again, there's no citation to anything in the record where he did so. What the judge did was said, look, in 2000, there's an agreement in which the parties say, they declare, SOFCO IB belongs to Gunnerman. For the next two and a half years, everybody knew that. Everybody knew Gunnerman was over at SOFCO. No complaints. In April 2003, Capital Strategies comes in. They know that Gunnerman has been working at SOFCO all in the same town. Everybody knows this. And they have copies of the separate corporate opportunity in 2000. They have the consulting agreement. They have all of the agreements. They're all reviewed by lawyers. And as part of a unified transaction, to have Gunnerman give up his connections with Clean Fuels, to go to SOFCO, to induce him to do it, they said go to SOFCO, develop the IP, that's fine, we have no problem. Nobody ever testified anything to the contrary. I don't think I have any more on this. The Court has some questions. Thank you. Thank you. Briefly, Jeff Tillotson. I'm here on behalf of the appellee, Dr. Rudolph Gunnerman. I wish to just make briefly two points on behalf of Dr. Gunnerman. The first point is that the flaw in the appellant's argument is that the transfer agreement is the starting place for the interpretation. It's, in fact, the ending road for the parties. The evidence presented to the district court during the trial was that the parties began their dealings, absolutely radical strategy, way back in 2000 when CFT decided it needed to remove Dr. Gunnerman from the company in an effort to save it. That's where you get the initial agreement, such as the separate corporate opportunity agreement, that's referred to in the district court's judgment, as well as the initial consulting agreement. The problem was they had to entice Dr. Gunnerman to leave the company, and he was the majority shareholder, the founder, the chairman of the board, and the CEO. And the testimony presented to the district court was that the CFT management accomplished that tactic by giving him the SOFCO opportunity, which he had been separately pursuing. And that began the parties' dealings in 2000, and that's the relevance of those agreements in connection with the district court's interpretation of what then took place in 2003. The evidence presented to the district court at the trial was that in 2003, Capital Strategies stepped in to provide salvation financing for the company, and as part of that financing for CFT wanted to ensure Dr. Gunnerman was completely removed from CFT, and you had the next series of transactions. Now, Capital Strategies, in effect, took the ball wherever it laid. They bought and got whatever existed through the exclusive license agreement, whatever Dr. Gunnerman owned. There was no expansion or subtraction of that. And therefore, the next series of agreements, which memorialized Dr. Gunnerman's departure, in effect picked that up and completed that process through the termination agreement and the transfer agreement. That's the history the district court saw, and that's the relevance of those agreements. Point number two is that the position offered for an interpretation to harmonize the parties' dealings as offered here on Appellate's argument is completely implausible and illogical. The idea was that Dr. Gunnerman was going to go his way and take Sulfco with this startup technology, and Clean Fuels was going to go a different way, and therefore was the separation. Dr. Gunnerman couldn't compete against CFT, was the evidence at trial, but he was free to pursue the Sulfco field as defined in the termination agreement. However, there is no way that the world as described by Appellate could exist, meaning that Dr. Gunnerman could compete and pursue the Sulfco field, but not use the Sulfco technology because it had somehow been transferred to CFT. That was the conundrum the district court faced, that that situation couldn't exist. That was the testimony offered by the parties, including my client, Dr. Gunnerman, who testified the point of this arrangement was to allow him to pursue that Sulfco technology. And that was the conduct of the parties over a period of time. Sulfco existed as a publicly traded company. It raised money on the belief that it owned that technology, and there was no contradicting evidence to suggest otherwise. That was the perspective and the evidence presented to the district court, which I think fairly supported its decision, but more importantly, under this court's recent decision in Hinkson, to undo that and construe it in the way in which Appellate does results in an illogical and really implausible situation for my client. Unless the court has questions, that was the perspective of Dr. Gunnerman. I appreciate your time. Thank you, Your Honors. Thank you. Counsel? Thank you. Opposing counsel's response to my argument about this problem with the different definitions of the fields is to say, well, if we're right, if Talisman's right, then Mr. Gunnerman couldn't work at all. But the fact of the matter is he could work. He could compete. He just couldn't use the technology. What they're trying to do is say, because we allowed him to compete, therefore he can use the technology also, and we end up with effectively no restriction on what he can do. He can use the technology and he can compete against us. If they wanted that, they should have got that in the transfer agreement. We said it was fine in the release agreement. We were happy to have him compete. We were not happy to have him use the technology because if he used that and competed, we hadn't got anything from him. There was no point to this from our point of view. Opposing counsel says our position is self-contradictory. I want to just make clear the district court never found anything like that, never said anything like that. If you look at its decision, it doesn't discuss this issue or explain how this can be reconciled or how this would make any sense of the agreements or what went on here. That's the fundamental problem we're having with this. Opposing counsel says, well, no one said there was a breach of the transfer agreement until talisman came along and bought up capital strategies rights. That's true. But why is that? It's because it was only after that it was discovered in a locked filing cabinet that it belonged to Mr. Gunnerman's son, Peter, who'd been an executive at Clean Fuels, a bunch of letters. And what were those letters? They were letters sent out by Peter Gunnerman, Rudy Gunnerman's son, saying that there was a natural fit between the technology that Solfco was developing and what Clean Fuels was developing and that there was a synergy between those things. Mr. Gunnerman, to get these initial agreements signed when this all started, went to the board. He's the president. He's the founder. He's the expert and tells the board the exact opposite, that there's no problem, that we aren't competing with each other. So it was only when talisman found those letters in 2005 that it went, we haven't been told the truth about the overlap here. And that's why it brought this case. And that's why no one objected beforehand, because nobody knew about this. Now, is there a – are you making – excuse me. I thought your claim was stated as a breach. Are you – is there a claim for misrepresentation? No, no, Your Honor. Our claim is that their whole argument here, they say the main thing the district court found was conduct of the parties and that that should be used to interpret the agreements. And they say that Clean Fuels acted in a way contrary to what we say the proper interpretation is. And our point is, yes, Clean Fuels did that, but why did it do it? It did it because Mr. Gunnerman misrepresented what the technologies were and what was going on. So its conduct is irrelevant because it didn't know the truth, because Mr. Gunnerman did not tell them the truth. He didn't – it's undisputed that he never told them that these technologies were synergistic. He never told them that. So they never knew this, and they relied on him. Why not? He's the founder. He's the president of the company. He's the expert on this technology. So they took his word for it. But their then acting in conformity with what he told them, which wasn't accurate, in no way indicates that they consented to or agreed with his interpretation. They did in the sense that they went that way because of what he told them. But he didn't disclose to them the truth. And Dr. Yee, whose technology this is all based on, testified that he thought when he was working with Mr. Gunnerman on this technology that he was working for Clean Fuels because the technologies were like this. They overlapped each other. So the guy who created them says they overlapped them. But Mr. Gunnerman's out telling the exact opposite. Dr. Yen. I'm sorry. Yes. I just want to make sure. And so Peter Gunnerman, is he? Peter is the son of Roy Gunnerman. So that's our point about all this argument about conduct. They say in their brief that the main reason the agreement is interpreted against them is the conduct of Clean Fuels. And our response is Clean Fuels' conduct can't be counted because Clean Fuels wasn't told the truth. They didn't really know what was going on. So it's not a misrepresentation claim in the sense of we're trying to invalidate the agreement. It's a misrepresentation claim that says you can't count that because we didn't know the truth. Okay. I think I've covered my points unless the Court has something else. I think I've about run out of time anyway. Okay. Thank you. Thank you all. Interesting case and we do appreciate the argument.
judges: Ripple, Rymer, Fisher